IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Arthur "Ted" Johnson, | )<br>)<br>) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:23-cv-03898-BHH |
| v. | ) |
| | ) **Opinion and Order** |
| Aeropure Acquisition, Inc. and Richard Aaron Paul, | )<br>)<br>) |
| Defendants. | )<br>) |
| _____ | )<br>) |

This matter is before the Court on Plaintiff Arthur "Ted" Johnson's ("Plaintiff") motion for prejudgment writ of attachment (ECF No. 26.) For the reasons set forth below, the Court denies Plaintiff's motion.

## BACKGROUND

On July 10, 2024, pursuant to S.C. Code Ann. § 15-19-10, *et seq.*, Plaintiff filed the instant motion requesting that this Court issue a prejudgment writ of attachment against non-resident Defendant Richard Aaron Paul ("Defendant Paul") in the amount of $250,000.00. Specifically, Plaintiff's request is that this Court attach Defendant Paul's 50% share of the proceeds from the sale of his and his wife's primary and jointly owned residence located in Memphis, Tennessee. Plaintiff argues that "the circumstances indicate an intention on the part of [Defendant Paul] to divert the sales proceeds in a manner than will defraud Plaintiff, who is [Defendant Paul]'s known creditor." (ECF No. 26 at 1.) According to Plaintiff, those circumstances are: (1) counsel for Defendant Paul did not provide Plaintiff's counsel, upon request, "details relating to the sale, including the

closing date"; (2) counsel for Defendant Paul "did not provide assurance that [Defendant Paul] would not divert the proceeds from the upcoming sale" when asked by Plaintiff's counsel to "agree to an arrangement to ensure that Plaintiff will not be defrauded"; and (3) "Plaintiff may have to look solely to [Defendant Paul] for payment of the Note"[1] (that led him to file the instant lawsuit) because all of Defendant Aeropure Acquisition, Inc.'s assets have been liquidated. (*Id.* at 2-4.)

Plaintiff asserts that "South Carolina law authorizes the issuance of a prejudgment writ of attachment in actions in which a party seeks the recovery of money, real or personal property, or damages for the wrongful conversion and detention of personal property, against a non-resident defendant, or where a person has or is about to assign[], dispose[] of or secrete[d] property to defraud creditors," and he cites to § 15-19-10(1), (2), (5) and (8), and *Scratch Golf Co. v. Dunes West Residential Golf Props.*, 603 S.E.2d 905, 908 (2004) ("[T]he purpose of attachment generally is to take a defendant's property into legal custody so that it may be applied to the plaintiff's debt." (quotations omitted)). (*Id.* at 4.)

As required by § 15-19-50, Plaintiff's motion was accompanied by his affidavit, which he contends satisfies the requirements for issuance of a prejudgment writ of attachment against Defendant Paul. (*See id.* at 4; *see also* ECF No. 26-1.)

Defendant Paul filed a response in opposition, opposing Plaintiff's motion on several grounds. (ECF No. 27.) Those grounds are: (1) South Carolina's attachment statute does not authorize the seizure of property located outside the State; (2) Plaintiff's motion and affidavit are insufficient to warrant attachment relief; (3) Defendant Paul has not secreted assets to defraud creditors and has no intention to do so; (4) Plaintiff's

---

[1] The Note was secured by a Guaranty Agreement obligating Defendant Paul to guarantee Defendant Aeropure Acquisition, Inc's prompt payment of the Note when due. (ECF No. 26 at 2.)

2

proposed bond of $3,000.00 is insufficient; and (5) Defendant Paul disputes liability for the $250,000.00 amount sought to be attached. (*Id.*)

## DISCUSSION

The issue before the Court is whether a sufficient showing has been made which would authorize *this* Court to issue a writ of attachment of proceedings from the sale of Defendant Paul's property in Tennessee in the amount of $250,000.00. In resolving this inquiry, the first question is what law is to be applied. In the federal courts, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment. Fed. R. Civ. P. 64; *see also 6 Am.Jur.2d,* Attachments and Garnishment § 16 ("The primary purpose of attachment is to permit a creditor to secure and hold a debtor's property to satisfy a debt which the creditor hopes to prove."). Therefore, there is no dispute that South Carolina law governs *this* Court's issuance of a writ of attachment.

The relevant South Carolina statute is S.C. Code § 15-19-10, *et. seq.*, which provides in relevant part:

> **SECTION 15-19-10. Grounds for attachment generally.**
>
> In any action:
>
> (1) For the recovery of money;
>
> (2) For the recovery of property, whether real or personal, or damages for the wrongful conversion and detention of personal property;
>
> …
>
> (5) Against a defendant who is not a resident of this State;
>
> …

3

(8) When any person or corporation is about to remove any of his or its property from this State, or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his or its property with intent to defraud creditors as mentioned in this chapter; . . . . .

**SECTION 15-19-30.** Attachment when debt is not due.

Whenever a debt is not yet due and it appears to the satisfaction of a circuit judge, clerk of the court of common pleas or magistrate, by affidavit, that the debtor has departed from the State with intent to defraud his creditors or to avoid the service of a summons or keeps himself concealed therein with a like intent or that such person has removed or is about to remove any of his property from this State with intent to defraud his creditors or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his property with like intent, the plaintiff forthwith may institute suit upon such debt or cause of action, and the circuit judge, clerk or magistrate may issue his warrant of attachment as if such debt were then due and payable.

**SECTION 15-19-110.** Issuance and form of attachment.

When the affidavit and bond are filed with the clerk of court of any county of this State or with a magistrate, when the amount involved is within his jurisdiction, he shall issue his warrant of attachment in the following form: . . . .

**Section 15-19-220. Property which is subject to attachment.**

The rights or shares which any defendant may have in any vessel or in the stock of any association or corporation, together with the interest and profits thereon, and all other property of such defendant in this State, except that exempt from attachment by the Constitution, shall be liable to be attached and levied upon and sold to satisfy the judgment and execution.

Based solely on this statute, Plaintiff seeks to have this Court "attach $250,000.00 of [Defendant Paul]'s 50% share of proceeds from the sale" of his primary residence *in Memphis, Tennessee*. (ECF No. 26 at 1.) Pursuant to Defendant Paul's declaration filed with the Court on July 14, 2024, "[t]he net sales proceeds" from the sale of his and his

4

wife's residence in Memphis, Tennessee "have been disbursed to [their] account held ***at a bank located in Tennessee***." (ECF No. 27-1 ¶ 12) (emphasis added.)

Notably, however, missing from Plaintiff's motion is case law (or other authorities) supporting that South Carolina's attachment statute has extraterritorial effect. (ECF No. 26.) To the extent Plaintiff may be relying on *Charles R. Allen, Inc. v. Island Co-op. Servs. Co-op. Ass'n, Ltd*., 109 S.E.2d 446, 449 (1959), the Court notes that "t[h]e jurisdiction of the lower Court was obtained by virtue of the attachment of proceeds of the draft in question" because said proceeds were held at **the South Carolina National Bank in Charleston, South Carolina**. *Id.* at 450 (emphasis added). Moreover, the Court acknowledges that the South Carolina Supreme Court stated in *Pelzer Mfg. Co. v. Pitts & Hartzog,* that the obvious intention of the attachment statute "was to subject to attachment process every property interest of the debtor – **not only that which is legal and that capable of actual seizure, but that which is equitable**, and that requiring actions either at law or in equity to make it available for the payment of the attachment debt." *Pelzer Mfg. Co. v. Pitts & Hartzog*, 57 S.E. 29, 33 (1907) (emphasis added) (concluding that the circuit judge erred in charging the jury that the equitable interest of a South Carolina firm in the certificates of stock in mills located in the State of South Carolina was not subject to attachment). However, it fails to see how this language, specifically, or the case's holding, generally, supports this Court's extension of the attachment statute to property and monies of a non-resident defendant located and housed outside the state of South Carolina.

5

After thorough review of the parties' briefs, the attachment statute, and the relevant case law, the Court finds that Defendant's first argument on the limits of jurisdiction has merit and on that basis Plaintiff's motion should be denied.

Under Rule 64, Fed. R. Civ. P., the South Carolina law on attachment procedures should be applied by this Court under the same circumstances and in the same manner as in the South Carolina state courts, unless an existing federal statute governs.[2] South Carolina's attachment statute gives its courts the authority to issue a prejudgment writ of attachment when it appears to the judge by affidavit that "the debtor has departed from the State with intent to defraud his creditors or to avoid the service of a summons or keeps himself concealed therein with a like intent or that such person has removed or is about to remove any of his property **from this State** with intent to defraud his creditors or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his property with like intent." S.C. Code § 15-19-30 (emphasis added.) Attachment shall be issued when the required affidavit, per § 15-19-50, and the required bond, per § 15-19-80, "are filed with the clerk of court of any country of this State or with a magistrate, **when the amount involved is within his** jurisdiction, he shall issue his warrant of attachment . . . ." *Id.* § 15-19-110 (emphasis added.) No elaboration is provided in the statute as to what the limits of a court's jurisdiction are and, therefore, it is safe to assume that territorial limitations of the State are intended. *See e.g., Glenn v. 1946 Tudor Ford*, 71 S.E.2d 507, 508 (1952) (providing that the provisions of statutes, such as the attachment statute, "must be strictly construed"); *GM Gold & Diamonds, LP v. Fabrege Co., Inc.*, 489 F. Supp.

---

[2] Plaintiff does not contend that a federal statute governs, and the Court is not aware of any applicable federal law. *See e.g., United States v. Thornton*, 672 F.2d 101 (D.C. Cir. 1982) (attaching out of state property contrary to state law pursuant to a federal statute giving the United States special collection rights).

6

2d 725,728-29 (S.D. Tex. 2007) (analyzing Texas's attachment statute which is similar to South Carolina's statute) (noting that because the statute is "silent on the issue of extraterritoriality, [ ] the court should not infer any such unexpressed intent on behalf of the legislature"). In contrast to South Carolina's long-arm statute extending personal jurisdiction, no specific extension of jurisdiction is established under the attachment statute. Rather, the express language of the statute supports that the legislature intended to limit the attachment procedures to property in the State of South Carolina. *See* § 15-19-220 (. . . "and all other property of such defendant *in this State*") (emphasis added.)

This interpretation of South Carolina's attachment statute is consistent with South Carolina case law, which views attachment as an "extraordinary remedy," *Glenn*, 71 S.E.2d at 508, and which has limited the use of the attachment procedures to property located in the State of South Carolina.[3] *See, e.g., Harrison v. Morris*, 370 F. Supp. 142, 147 (D.S.C. 1974) (court issued a warrant of attachment of two railroad car cabooses owed by non-resident defendant where cabooses were located in South Carolina and plaintiff alleged defendant was intending to remove the cabooses from South Carolina with the intent to defraud him); *First Union Mortg. Corp. v. Thomas*, 451 S.E.2d 907, 911 (Ct. App. 1994) (court issued a writ of attachment on a check located in South Carolina intended for a non-resident, citing § 15-19-220 (1976) (all property of defendant in the state is subject to attachment except property constitutionally exempt from attachment)).

---

[3] While the Court was not able to locate any cases explicitly holding that the South Carolina attachment statute does not extend to property outside of South Carolina, it was also not able to locate any cases interpreting South Carolina's attachment statute as applying to property located outside of South Carolina.

7

In sum, the Court holds that the South Carolina attachment statute does not apply extraterritorially to out-of-state property or to an out-of-state bank account. This interpretation is consistent with the questions of due process and comity that might arise if this Court were to issue extraterritorial writs of attachment. Accordingly, the Court declines to expand the application of South Carolina's attachment statute and, therefore, denies Plaintiff's motion for prejudgment writ of attachment.

## CONCLUSION

For the foregoing reasons, the Court **denies** Plaintiff's motion for prejudgment writ of attachment. (ECF No. 26.)

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

July 15, 2024
Charleston, South Carolina